UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KAREN TALBOT                                    CIVIL ACTION 07-1599

VERSUS                                          JUDGE S. MAURICE HICKS, JR.

THE BROYLES GROUP, LLC                          MAGISTRATE JUDGE HORNSBY
AND CASTLE CREEK EXPRESS, LLC

**MEMORANDUM RULING**

Before this Court is a Motion for Summary Judgment filed by the Defendants, The Broyles Group, L.L.C. ("Broyles"), Castle Creek Express, LLC ("Castle Creek") and Pel-State Oil Company, Inc. ("Pel-State") (collectively referred to as "Broyles Defendants"). [Record Document 49]. The motion is opposed. For the reasons discussed herein, the Broyles Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**FACTUAL BACKGROUND**

Talbot alleges that she was hired by The Broyles Group, L.L.C. ("Broyles") as a Sales Coordinator (later changed to Account Executive) on May 17, 2005. [Complaint at ¶6]. Her starting salary was $40,000 per year, no car allowance, reimbursement for gas and lunches and health insurance after three months. [Complaint at ¶6]. These benefits were increased to a salary of $45,000 per year plus a $500 car allowance in May 2006. [Complaint at ¶9]. According to Plaintiff, on September 26, 2005, Greg Taylor ("Taylor"), Talbot's supervisor, hired a male, Duane Evans ("Evans") as an Account Executive. [Complaint at ¶8]. Talbot contends that she and Evans performed the same job, but Evan's starting salary was $50,000 a year, plus a $500 per month car allowance, and

health insurance beginning immediately. [Complaint at ¶8]. A year later on October 2, 2006, Talbot alleges that Greg Taylor gave the position of Director of Operations to Evans, which resulted in a substantial increase in pay and other benefits. [Complaint at ¶10]. On May 14, 2007, Talbot was laid off effective March 16, 2007. [Complaint at ¶11]. Subsequently, Talbot contends that Evans took over her old position. [Complaint at ¶¶11-12].

Plaintiff alleges that she was paid less than males doing essentially the same job requiring equal skill, effort and responsibilities, because of her gender and religion. [Complaint at ¶13 and First Amended Complaint at ¶20]. She has brought suit against The Broyles Group, L.L.C. ("Broyles"), Castle Creek Express, L.L.C. ("Castle Creek") and Pel-State Oil Company ("Pel-State"). [Complaint at ¶3 and Amended Complaint at ¶2].

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little

v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56 requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

## LAW AND ANALYSIS

**Equal Pay Act**

Talbot asserts a cause of action under the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d)(1) ("EPA"). To establish a *prima facie* case for violation of the Equal Pay Act, the Plaintiff must establish that, "the employer pays workers of one sex more than workers of the opposite sex for equal work." Corning Glass Works v. Brennan, 417 U.S. 188, 191, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). More specifically, Talbot must demonstrate that: (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. Id. "Title VII states that it is unlawful 'to discriminate against any individual with respect to his compensation ... because of such individual's [...] sex.'" Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio, 261 F.3d 542, 545-46 (5th Cir.2001), cert. denied 537 U.S. 1087, 123 S.Ct. 694, 154 L.Ed.2d 631 (2002) (quoting 42 U.S.C. § 200e-2(a)).

Talbot's burden is to show that the Broyles Defendants' legitimate, nondiscriminatory

reason is pretextual. Plemer v. Parsons-Gilbane, 713 F.2d 1127, 1136 (5th Cir.1983). The EPA defines the range of legitimate, nondiscriminatory reasons available to an employer: An employer may pay different wages under these circumstances based on one of the four statutory exceptions to the EPA: (1) a seniority system; (2) a merit system; (3) a system that measures earning by quantity or quality of production; or (4) a differential based on any other factor other than sex. Id.

From this Court's review of the competent summary judgment evidence, it appears that Talbot has established a *prima facie* claim under the EPA from September 2005 (the time of Evans hiring) to August 2006. The Plaintiff accepts that once Evans began covering operations and became the Director of Operations any similarity between the jobs ended. [Record Document 54 at 29]. According to the uncontroverted summary judgment evidence, Talbot was a female [Record Document 54-4 at 1]; Evans was a male [Record Document 49-3]; Talbot was paid initially $40,000 a year, and then in May 2006 she received a raise to "$45,000, salary plus $500 per month in a car allowance;" [Record Document 49-3 at 3]; and Evans was hired in September 2005 as an Account Executive in sales with a $50,000 salary plus $500 per month in a car allowance. [Record Document 54-15 at 8].

However, according to the EPA and applicable jurisprudence, an employer can pay two workers different salaries for nondiscriminatory reasons. According to Greg Taylor's ("Taylor") Affidavit, Evans was paid more than Talbot because of his prior experience and responsibilities. See Record Document 49-3. According to Taylor,

> [b]ased upon Mr. Evans experience I believed that he was able
> to work in a broad range of jobs in the trucking industry, not
> merely sales, and that his trucking experience would enable

him to better manage national sales accounts as well.

[Record Document 49-3 at 2-3]. Talbot responds with an affidavit that states she was just as qualified as Evans. Neither party has provided resumes or other exhibits for comparison between Talbot and Evans. Nevertheless, her affidavit is competent summary judgment evidence and thus Talbot has created a genuine issue of material fact as to whether the proffered nondiscriminatory reason used to justify the disparate pay was mere pretext. Without more, summary judgment is inappropriate on this issue.

**Title VII–Gender[1]**

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a). When there is no direct evidence of discrimination, as in this case, a plaintiff's claims are evaluated using the evidentiary framework set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the McDonnell Douglas framework, in order to survive a motion for summary judgment, the plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence. Id. at 802, 93 S.Ct. at 1824.

To establish a *prima facie* case of sex discrimination, the plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably. Willis v. Coca Cola Enterprises, Inc., 445 F.3d 413, 420

---

[1]"Louisiana's anti-discrimination law is substantively similar to the federal statute"; thus, the analysis of both the state and federal law claims of discrimination are the same. Brittain v. Family Care Services, Inc., 34,787-CA (La.App. 2 Cir. June 20, 2001), 801 So.2d 457, 461.

(5th Cir.2006); <u>Rutherford v. Harris Co., Tex.</u>, 197 F.3d 173, 184 (5th Cir.1999).

Once established, the *prima facie* case raises a presumption of discrimination, which the defendant must rebut by articulating a legitimate, nondiscriminatory reason for its actions. <u>Meinecke v. H & R Block</u>, 66 F.3d 77, 83 (5th Cir.1995). If the defendant satisfies this burden, the plaintiff must prove the proffered reasons are pretextual. <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

Turning to the record, there appears to be no direct evidence on the issue so the Court must turn to the standard <u>McDonnell Douglas</u> framework. From this Court's review of the briefs and the postures assumed by the parties, the Defendants concede that Talbot has presented a *prima facie* case of gender discrimination. Consequently, the Broyles Defendants attempt to articulate a legitimate nondiscriminatory reason for discharging Talbot. According to Taylor's Affidavit, it was Taylor's decision to terminate Talbot,

> [d]ue to financial losses experienced at Monroe Warehouse Trucking/Castle Creek Express and Castle Creek Specialties, a series of layoffs occurred beginning in late 2006 . . . Karen Talbot was released in the second reduction . . . Karen Talbot was not included in the first layoff but I recommended the termination of Karen Talbot rather than Duane Evans in the second reduction on March 4, 2007 because I believed that Mr. Evans could work in multiple different capacities in the trucking business rather than merely in sales. Mr. Evans had a much broader experience in the trucking business and I believed that he would not be effective in a sales role due to that experience, but he also could handle additional operations functions. It was extremely likely that Castle Creek Express and Castle Creek Specialties would be reduced further, and that an individual who could perform operations functions as well as sales would be more beneficial to the business than someone with primarily sales experience.

[Record Document 49-3 at 4-5]. The reasons proffered by Taylor qualify as legitimate

nondiscriminatory reasons (ie., the need for cost saving, workers needing to take on multiple roles). However, Talbot has come forward with various quotes from Taylor that suggest a certain animus towards women. Specifically, Talbot states in her affidavit that Taylor made the following statements during the course of her employment:

1. "trucking is a man's world,"
2. "staying home and being a man was the best thing for me,"
3. "sales is not for women,
4. "your place is with your family"
5. Words to the effect that the woman in the family must be obedient and subservient to her husband; this was said by Taylor in a sales meeting while referencing the Bible. He also stated in a sales meeting that a woman can work outside the home but if that causes a problem, she should return. He referenced Biblical verses to support his view . . .
6. Taylor told me several times I needed to focus on my children.
7. Taylor said in a sales meeting that his wife was not performing her marital duties of cleaning and keeping the house organized because she had a part-time job.

[Record Document 54-4 at 5-6].

The Defendants argue that these quotes are taken out of context. The Court has reviewed the evidence presented and finds that Talbot has created a genuine dispute of material fact.

Further, Talbot presents the deposition testimony of Greg Taylor's executive assistant, Veronica Brokenberry. Her testimony corroborates the types of gender-biased comments that Talbot accuses Taylor of making. The most pertinent testimony of Brokenberry surrounds the moments leading up to Talbot's termination. According to Brokenberry:

And I said I didn't understand why he was letting Karen [Talbot]

>go. And he says, well, Karen needs to be at home taking care of her family anyway. You know, he said he had heard that she had some marital problems, so it was best that she be home with her family.

[Brokenberry Transcript, Record Document 66-1 at 54:24-25, 55:1-3]. A genuine factual dispute exists. Summary judgment is, therefore, inappropriate on this issue.

**Title VII-Religion**

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of religion. 42 U.S.C. § 2000e-2(a)(1),(2). "The term 'religion' includes all aspects of religious observation and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate a religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

Typically to establish a *prima facie* case of religious discrimination under Title VII, Talbot must prove the following: (1) he had a bona fide religious belief that conflicted with an employment requirement, (2) the employer was informed of that belief, (3) he was discharged for failure to comply with the employment requirement. Bruff v. North Miss. Health Servs., Inc., 244 F.3d 495, 500 n. 9 (5th Cir.2001), cert. denied 534 U.S. 952. If the plaintiff establishes a *prima facie* case of religious discrimination, the burden shifts to the employer to show that it was unable reasonably to accommodate an individual's religious needs without undue hardship. Turpen v. Mo.-Kan.-Tex.R.R., 736 F.2d 1022, 1026 (5th Cir.1984).

Under Title VII, an employer has the "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." Trans World Airlines, Inc., v. Hardison, 432 U.S. 63 (1977). An employer does

not have to fully accommodate a plaintiff's religious belief that he cannot work a particular day, especially when to do so would be forced to schedule another employee to every shift the person with the religious belief could not work. See Hardison, 432 U.S. at 68-70. "Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee. Once the [employer] establishes that it offered [plaintiff] a reasonable accommodation, even if that alternative is not the employee's preference, the employer has, as a matter of law, satisfied its obligation under Title VII." Bruff, 244 F.3d at 501. "Accommodation can take place in two ways: (1) an employee can be accommodated in his current position by changing working positions, or (2) the employer can offer to let the employee transfer to another reasonably comparable position where conflicts are less likely to arise." Id. If the employer is unable to accommodate the employee without undue hardship on the conduct of the employer's business, the employer need not offer an accommodation. Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68 (1986). An employer need not accommodate a plaintiff's religious belief that he cannot work on a particular day. Hardison, 432 U.S. 68-70.

However, from this Court's review of Talbot's Complaint, motion, and briefs, it does not appear to be a claim regarding accommodation for religious beliefs. Instead it appears to be more of a claim for disparate treatment because of religion. The Seventh Circuit has adopted the Tenth Circuit's approach for determining if disparate treatment actually occurred. See Sattar v. Motorola, Inc., 138 F.3d 1164 (7th Cir. 1998). According to the Tenth Circuit, the originator of this approach,:

> in order to establish a *prima facie* case in actions where the plaintiff claims that he was discriminated against because he did not share certain religious beliefs held by his supervisors,

> we hold that the plaintiff must show (1) the he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his employer's religious beliefs.

Shapolia v. Los Alamos Nat'l Lab., 992 F.2d 1033 (10th Cir. 1993). The Sixth Circuit has also adopted this approach.

The Court has reviewed the jurisprudence and has been unable to find any cases in the Fifth Circuit that adopt this "disparate treatment" approach. This Court finds that analytical approach taken by the Sixth, Seventh and Tenth Circuits to be applicable here. With this Court adopting this approach, Talbot has clearly failed on the third prong[2] of the *prima facie* case–providing additional evidence to support the inference that actions were based on Talbot's failure to hold or follow his employer's religious beliefs. The record demonstrates that Taylor laced many of his e-mails and speeches with biblical verses. There is no evidence in the record to support any inference that the employment action taken against Talbot was taken because of a discriminatory motive predicated on Talbot's failure to hold or follow Taylor's religious beliefs.

Accordingly, the Court finds that Talbot is unable to present a *prima facie* case of religious discrimination. There is no genuine dispute of material fact and the Broyles Defendants are entitled to summary judgment on the claim for religious discrimination.

**Proper Defendants**

---

[2]For purposes of this motion, this Court assumes that Talbot has successfully demonstrated she was subject to an adverse employment action and that at the time the employment action was taken her performance was satisfactory.

Talbot contends that The Broyles Group, L.L.C. and Pel-State Oil Company were her employers and thus proper defendants in this action. Since Talbot advances claims under both state and federal law, the Court must review each defendant under both rubrics.

### I. Louisiana Law

Louisiana defines an "employer" as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee...." LA. R.S. § 23:302(2) (in pertinent part).

### II. Federal Law

"The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees." Lusk v. Foxmeyer Health Corp., 129 F.3d 773, 778 (5th Cir.1997). However, a plaintiff may overcome that presumption by proving that the parent company and its subsidiary are a single enterprise. See Johnson v. Crown Enterprises, Inc., 398 F.3d 339, 344 (5th Cir.2005). Factors that this circuit considers to determine if distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. Trevino v. Celanese, 701 F.2d 397, 404 (5th Cir.1983). "Courts applying this four-part standard in Title VII and related cases have focused on the second factor: centralized control of labor relations." Id. "This criterion has been further refined to the point that '[t]he critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?'" Id. Whether two employers are engaged in an integrated enterprise for purposes of Title VII is a fact intensive determination. Vance v. Union

Planters Corp., 279 F.3d 295, 297 (5th Cir. 2002).

### i. Pel-State Oil Company

According to the Defendants, "[t]he plaintiff cannot come forward with any evidence that, as a matter of law, Pel-State has any liability to her because she was never employed by Pel-State, had no involvement with the business of Pel-State and Pel-State exercised no control over her work." [Record Document 49-1 at 9]. "Plaintiff concedes that Pel-State Oil Company was not a direct employer of Plaintiff. However, it is a single integrated enterprise with The Broyles Group and is thus a proper defendant . . . ." [Record Document 54 at 27].

From the Plaintiff's own concession, Pel-State would not qualify as an employer of Talbot under Louisiana law because Pel-State never received a service from Talbot and consequently never gave Talbot monetary compensation.

Turning to federal law and the single-integrated enterprise, the result is the same. As the Fifth Circuit makes clear, the key inquiry is control. Pel-State was a company that was similarly situated to Talbot's employer Castle Creek Express, L.L.C. From this Court's understanding of the single-integrated enterprise doctrine, it appears to only work vertically in an organizational structure, not horizontally as Plaintiff advances in this instance. Pel-State exercised no control over Talbot. Thus it cannot be considered a proper defendant under federal law.

Therefore, there is no genuine dispute of material fact on this issue of Pel-State as an employer of Talbot. Accordingly, summary judgment is appropriate on this issue.

### ii. The Broyles Group, L.L.C.

In regards to The Broyles Group, L.L.C., Defendants argue "[c]learly, the plaintiff

bears the burden of proving that The Broyles Group and/or Pel-State were her 'employer.' The Broyles Group was merely a payroll entity and there is no evidence it had any employees. Additionally, plaintiff has testified she was not employed by either The Broyles Group or Pel-State; rather, she was employed by Castle Creek Express and Castle Creek Specialties." [Record Document 49-1 at 11]. "Plaintiff shows that all defendants are interrelated to the extent they should be considered a single integrated enterprise." [Record Document 54 at 21].

      The record in this case is voluminous. The Court is convinced that, taking all of the record into consideration, Plaintiff has created a genuine dispute of material fact as to whether the Broyles Group, L.L.C. was Talbot's employer for purposes of Louisiana state law and federal law. Specifically, Talbot has presented this Court with various W-2 forms. Interestingly, in 2006, Talbot received two W-2 forms: (1) The Broyles Group, L.L.C. and (2) Monroe Warehouse Trucking, Inc. (later known as Castle Creek Express, L.L.C.). [Record Document 54-15 at 9-10]. Additionally, Talbot's retirement benefits were not held by Castle Creek Express, L.L.C., but instead were paid to The Broyles Group 401(k). [Record Document 54-15 at 19]. Finally, from this Court's review of the deposition testimony submitted there appears to be interlocking management officers throughout the companies under the Broyles Group, L.L.C. Specifically, Tom Turnbow served as the CEO for all of the companies run by The Broyles Group, L.L.C., and Glen Williams served as the CFO for all of the companies run by The Broyles Group, L.L.C. [Record Document 49-5 at 3-4 and 17]. Taking all of these things into consideration, this Court is forced to conclude that Plaintiff has created a genuine dispute of material fact as to who her employer was and as to whether The Broyles Group, L.L.C. and the Castle Creek entities were a single-

integrated entity. Accordingly, summary judgment in favor of the Broyles Group, L.L.C. is inappropriate on this issue.

## CONCLUSION

The Court finds there are genuine disputes of material fact as to the claim of a violation of the Equal Pay Act from September 2005 to August 2006, as to the claim of gender discrimination and as to whether The Broyles Group, L.L.C. was Talbot's employer. Conversely, there are no genuine disputes of material fact as to Plaintiff's claim of religious discrimination and Plaintiff's claims that Pel-State Oil Company was her actual employer.

Accordingly,

**IT IS ORDERED** that the Broyles Defendants' Motion for Summary Judgment on the Claim of a Violation of the Equal Pay Act from September 2005 to August 2006, Claim of Gender Discrimination and whether The Broyles Group, L.L.C. was Talbot's employer [Record Document 49] be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Broyles Defendants' Motion for Summary Judgment on the Claim of Religious Discrimination [Record Document 49] be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Broyles Defendants' Motion for Summary Judgment on the Claim of Pel-State Oil Company, Inc's Status as Talbot's Employer [Record Document 49] be and is hereby **GRANTED**.

An Order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 23rd day of February, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE